LATHAM & WATKINS LLP
Elizabeth L. Deeley (Bar No. 230798)
 *elizabeth.deeley@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
T: +1.415.391.0600 / F: +1.415.395.8095

Susan E. Engel (*pro hac vice*)
 *susan.engel@lw.com*
555 Eleventh Street, Suite 1000
Washington, D.C. 20004
T: +1.202.637.2200 / F: +1.202.637.2201

William J. Trach (*pro hac vice*)
 *william.trach@lw.com*
200 Clarendon Street
Boston, Massachusetts 02116
T: +1.617.948.6000 / F: +1.617.948.6001

*Attorneys for Defendants Robert J. Fisher, Sonia
Syngal, Arthur Peck, Amy Bohutinsky, Amy Miles,
Isabella D. Goren, Bob L. Martin, Chris O'Neill,
Elizabeth A. Smith, John J. Fisher, Jorge P.
Montoya, Mayo A. Shattuck III, Tracy Gardner,
William S. Fisher, and Doris F. Fisher and Nominal
Defendant The Gap, Inc.*

*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NOELLE LEE, derivatively on behalf of THE GAP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ROBERT J. FISHER, SONIA SYNGAL, ARTHUR PECK, AMY BOHUTINSKY, AMY MILES, ISABELLA D. GOREN, BOB L. MARTIN, CHRIS O'NEILL, ELIZABETH A. SMITH, JOHN J. FISHER, JORGE P. MONTOYA, MAYO A. SHATTUCK III, TRACY GARDNER, WILLIAM S. FISHER, DORIS F. FISHER, and DOES 1–30, <br> Defendants, <br><br> – and – <br><br> THE GAP, INC., <br> Nominal Defendant. | CASE NO. 3:20-cv-06163-SK <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Hearing: April 26, 2021 <br> Time: 9:30 a.m. <br> Location: Courtroom C, 15th Floor <br> Judge: Hon. Sallie Kim <br><br> Action filed September 1, 2020 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................. 1

II. ARGUMENT .................................................................................................... 3

   A.    Plaintiff Fails To Allege Futility ............................................................. 3

        1.    Plaintiff Fails To Plead That A Majority Of The Demand Board Faces A Substantial Likelihood Of Personal Liability Based On "Red Flags" ............................................................ 4

        2.    Plaintiff Fails To Allege A Substantial Likelihood Of Liability For Her Proxy Claims .......................................................... 9

        3.    Plaintiff Fails To Establish That Any Member—Let Alone A Majority—Of The Board Lacks Independence .................................. 12

   B.    Plaintiff Cannot Circumvent The Forum-Selection Clause ................................. 13

   C.    Plaintiff Fails To State A Claim For Violation Of Section 14(a) ...................... 16

        1.    Plaintiff Fails To Allege A Material Misstatement Or Omission ........................................................................................... 16

        2.    Plaintiff Fails To Allege That The Proxies Were An "Essential Link" To The Purportedly Loss-Generating Corporate Action .......................................................................... 19

        3.    Plaintiff's Section 14(a) Claim Is Partially Time-Barred ...................... 20

   D.    Plaintiff's Claims Are Unripe .............................................................. 20

III. CONCLUSION ................................................................................................ 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) ................................................................................12

*Batchelder v. Kawamoto*,
147 F.3d 915 (9th Cir. 1998), *as amended* (July 15, 1998) ..................................16

*Bhonagiri v. Pandey*,
2020 WL 5893404 (N.D. Cal. Oct. 5, 2020)..........................................................8

*Boilermakers Local 154 Ret. Fund v. Chevron Corp.*,
73 A.3d 934 (Del. Ch. 2013)......................................................................14, 15

*Brown v. Moll*,
2010 WL 4704372 (N.D. Cal. Nov. 12, 2010) ......................................................7

*Butorin v. Blount*,
106 F. Supp. 3d 833 (S.D. Tex. 2015) ................................................................15

*Buttonwood Tree Value Partners, LP v. Sweeney*,
2012 WL 2086607 (C.D. Cal. June 7, 2012) ........................................................6

*In re Citigroup Inc. S'holder Deriv. Litig.*,
964 A.2d 106 (Del. Ch. 2009)....................................................................3, 11

*City of Birmingham Relief and Ret. Sys. v. Hastings*,
2019 WL 3815722 (N.D. Cal. Feb. 13, 2019) ................................................19, 20

*City of Cambridge Ret. Sys. v. Ersek*,
921 F.3d 912 (10th Cir. 2019) ...........................................................................5

*In re CNET Networks, Inc.*,
483 F. Supp. 2d 947 (N.D. Cal. 2007) ................................................................7

*Color Switch LLC v. Fortafy Games DMCC*,
818 F. App'x 694 (9th Cir. 2020) ......................................................................14

*Doe 1 v. AOL LLC*,
552 F.3d 1077 (9th Cir. 2009) ..........................................................................14

*In re Facebook, Inc. S'holder Deriv. Privacy Litig.*,
367 F. Supp. 3d 1108 (N.D. Cal. 2019) ..................................................... *passim*

*Forestal v. Caldwell*,
739 F. App'x. 895 (9th Cir. 2018) ....................................................................13

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Gemini Techs., Inc. v. Smith & Wesson Corp.,*
    931 F.3d 911 (9th Cir. 2019) ...........................................................................16

*Grace Bros., Ltd. v. Uniholding Corp.,*
    2000 WL 982401 (Del. Ch. July 12, 2000)......................................................13

*Harbor Finance Partners v. Huizenga,*
    751 A.2d 879 (Del. Ch. 1999).............................................................................13

*Harris v. Carter,*
    582 A.2d 222 (Del. Ch. 1990).............................................................................12

*In re Seafarers Pension Plan on behalf of Boeing Co. v. Bradway,*
    2020 WL 3246326 (N.D. Ill. June 8, 2020), appeal docketed, No. 20-2244
    (7th Cir. July 9, 2020) ........................................................................................15

*In re Intuitive Surgical Shareholder Derivative Litigation,*
    146 F. Supp. 3d 1106 (N.D. Cal. 2015) ..............................................................8

*J.C. Penney Co., Inc. v. Ellison,*
    2019 WL 3408812 (Del. Ch. July 29, 2019).................................................5, 6

*James River Ins. Co. v. Hebert Schenk, P.C.,*
    523 F.3d 915 (9th Cir. 2008) .............................................................................16

*In re JPMorgan Chase Deriv. Litig.,*
    2014 WL 5430487 (E.D. Cal. Oct. 24, 2014) ...................................................19

*Knollenberg v. Harmonic, Inc.,*
    152 F. App'x. 674 (9th Cir. 2005) ....................................................................17

*La. Mun. Police Emps.' Ret. Sys. v. Wynn,*
    829 F.3d 1048 (9th Cir. 2016)………...................................................13

*Lightfoot v. MoneyonMobile, Inc.,*
    2019 WL 2476624 (N.D. Cal. June 13, 2019) ..................................................14

*Lopez v. CTPartners Executive Search,*
    173 F. Supp. 3d 12 (S.D.N.Y. 2016)..................................................................18

*Melbourne Mun. Firefighters' Pension Trust Fund v. Jacobs,*
    2016 WL 4076369 (Del. Ch. Aug. 1, 2016) ..............................................4, 8, 11

*In re MetLife, Inc. Deriv. Litig.,*
    2020 WL 4746635 (Del. C. Aug. 17, 2020) .......................................................7

*Mizel v. Connelly,*
    1999 WL 550369 (Del. Ch. July 22, 1999)........................................................13

*Mulquin v. Nektar Therapeutics,*
  2020 WL 7773580 (N.D. Cal. Dec. 30, 2020)...........................................................5

*Ocegueda v. Zuckerberg, et al.,*
  2021 WL 1056611 (N.D. Cal. March 19, 2021) ............................................ *passim*

*In re Paypal Holdings, Inc. S'holder. Deriv. Litig.,*
  2018 WL 466527 (N.D. Cal. Jan 18, 2018) .........................................................19

*In re Pfizer Inc. S'holder Deriv. Litig.,*
  722 F. Supp. 2d 453 (S.D.N.Y. 2010)..................................................................3

*Rales v. Blasband,*
  634 A.2d 927 (Del. 1993) ...............................................................................3, 12

*Ratner v. Bidzos,*
  2003 WL 22284323 (Del. Ch. Sept. 30, 2003) .....................................................7

*Richards v. Lloyd's of London,*
  135 F.3d 1289 (9th Cir. 1998) ..........................................................................14

*Rosenbloom v. Pyott,*
  765 F.3d 1137 (9th Cir. 2014) .............................................................................3

*Salzberg v. Sciabacucchi,*
  227 A.3d 102 (Del. 2020) .............................................................................14, 15

*In re SCANA Corporate Derivative Litigation,*
  2018 WL 3141813 (D.S.C. June 27, 2018).............................................................8

*Shaev v. Baker,*
  2017 WL 1735573 (N.D. Cal. May 4, 2017) ..........................................................3

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,*
  549 U.S. 422 (2007)...........................................................................................16

*Spread Your Wings, LLC v. AMZ Grp. LLC,*
  2020 WL 5749085 (N.D. Cal. Sept. 25, 2020) ....................................................14

*Texas v. United States,*
  523 U.S. 296 (1998)...........................................................................................20

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.,*
  845 A.2d 1031 (Del. 2004) ................................................................................17

*In re Verisign, Inc. Deriv. Litig.,*
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) ..............................................................17

*In re Wells Fargo & Co. Shareholder. Derivative Litigation,*
  282 F. Supp. 3d 1074 (N.D. Cal. 2017) ..............................................................19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

*Gulbrandsen ex rel. Wells Fargo & Co. v. Stumpf*,
    2013 WL 1942158 (N.D. Cal. May 9, 2013) ........................................................................7

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ...........................................................................14, 16

*In re Zillow Group, Inc. Shareholder Derivative Litigation*,
    2020 WL 978503 (W.D. Wash. Feb. 28, 2020) ........................................................8

**STATUTES**

15 U.S.C. § 78cc(a) ...........................................................................................16

**RULES**

Fed. R. Civ. P.
    9(b) .....................................................................................................17
    12(b)(6) ...............................................................................................20
    23.1 ..........................................................................................3, 7, 8, 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

## I.    INTRODUCTION

In an effort to distract from the vague and conclusory nature of her Complaint,[1] Plaintiff's Opposition is rife with inflammatory, unsubstantiated, and demonstrably false statements purporting to paint Gap and its Board as racists.  Those attacks, made out of whole cloth, are objectionable on several levels, but most notably because Plaintiff ignores the obvious diversity of Gap's leadership across multiple measures, including that (i) Gap is one of just three companies in the S&P 500 to be led by a woman of color, Ms. Syngal, as CEO and Board member; (ii) another Board member, Mr. Montoya, is of Latin American descent, and (iii) the Gap Board has had a Black director in 13 of the preceding 22 years.  But Plaintiff's charged rhetoric is no substitute for particularized allegations; and despite her repeated accusations that the Board disregarded discrimination, the Complaint and Opposition do not cite even a single instance of discriminatory conduct at Gap.  Plaintiff's unsupported claims should be dismissed in their entirety.

*First*, Plaintiff fails to plead *particularized facts* demonstrating that a demand on the Board would have been futile.  Plaintiff asserts that the Board ignored "pervasive legal violations" and "unlawful and discriminatory practices," but she does not allege any specific instance of discrimination or violation of law.  All she points to is a 1999 lawsuit related to a subset of employees at a single U.S. distribution center, publicly disclosed workforce demographics, and her personal desire to see pay ratios based on race.  But those are neither instances of discrimination or legal violations, nor "pervasive."  Plaintiff's suggestion that members of the Fisher family (Gap's founders) and certain Board members who are also Gap employees are not "independent"—*i.e.*, incapable of considering a pre-suit demand because of family relationships or executive roles—is contrary to law, but implicitly concedes the independence of every other Individual Defendant.

*Second*, this Court should enforce Gap's binding forum-selection clause, which unequivocally requires that "the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for . . . any derivative action or proceeding brought on behalf of the Corporation." Ex. I Art. VII § 5.  Plaintiff cannot leverage her tagalong Section 14(a) claim to avoid the forum

---

[1] Capitalized terms are used consistent with the definitions assigned in Defendants' Opening Brief.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

1  selection clause, and the Court can and should enforce the clause against all of Plaintiff's claims.

2      **Third**, even if the Court were to reach the merits of the federal claim (it need not), Plaintiff

3  does not identify any actionable misstatement or omission of material fact, much less an essential

4  link between such a misstatement and a loss-generating corporate action. The thrust of Plaintiff's

5  claim is that Defendants (i) failed to disclose that Gap "has never in good faith actively sought

6  African-American or minority candidates and does not consider racial and ethnic diversity when

7  choosing Board nominees"; (ii) directors' tenures equate to a failure to consider diverse candidates;

8  (iii) retention of the Company's world-renowned independent auditor led to "poor auditing of the

9  Company's internal controls"; (iv) the Company lacked effective internal controls; and (v) that

10  executive compensation was not tied to increased diversity, but rather to "discriminatory hiring,

11  promotion, and pay practices." Opp. at 20-21. But none of these purportedly "omitted material

12  facts" is a fact at all. And Plaintiff does not demonstrate that any alleged misstatement was an

13  "essential link" to any cognizable corporate harm, particularly given that she has not identified *any*

14  *harm*. Her tack-on federal securities claim is a sham and should be dismissed.

15      **Finally**, Plaintiff's claims should be dismissed as unripe because they are premised on

16  speculative damages. Plaintiff claims damages of costs associated with hiring new employees to

17  replace those who have quit and costs of settlements in discrimination lawsuits, but she does not

18  identify a single employee who has quit Gap, nor any discrimination settlement besides the two-

19  decade-old settlement that is far too stale to be relevant to Plaintiff's claim.

20      Plaintiff's Complaint is just one in a series of frivolous lawsuits her counsel filed in 2020

21  seeking to capitalize on the national dialogue on race and diversity. But the Complaint simply

22  does not state a violation of law and serves only to hinder Gap's progress on promoting diversity.

23  Indeed, Judge Laurel Beeler recently dismissed a substantially similar complaint filed by

24  Plaintiff's counsel against Facebook, Inc.'s board of directors for precisely the reasons articulated

25  in Defendants' motion in this case. *See Ocegueda v. Zuckerberg, et al.*, 2021 WL 1056611 (N.D.

26  Cal. March 19, 2021). Like the *Ocegueda* matter, this case is simple: There has been no

27  discrimination or unlawful conduct at Gap, and the Board has not taken any action that has caused

28  Gap any harm. Plaintiff's Complaint must be dismissed.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

## II.  ARGUMENT

### A.  Plaintiff Fails To Allege Futility

Plaintiff does not seriously contest the exacting requirements for pleading demand futility under FRCP 23.1 and Delaware law.  Mot. at 11-12.  Plaintiff argues that demand is futile because the Demand Board is "interested" in that they face a "substantial likelihood of liability" for allowing discriminatory conduct and the issuance of misleading Proxies, and because Defendants Robert, John, and William Fisher, as well as Ms. Syngal and Mr. Martin, are not "independent" by virtue of their family relationships, stock ownership, and/or employment at Gap.  Opp. at 15-26.  These arguments are insufficient and are contrary to well-settled law.  Plaintiff's conclusory allegations simply do not establish that any director failed to act in the face of a known duty to act. *In re Facebook, Inc. S'holder Deriv. Privacy Litig.*, 367 F. Supp. 3d 1108, 1123 n.5 (N.D. Cal. 2019).[2]  Plaintiff concedes that her pleading burden is heightened even further by Gap's exculpatory clause, Opp. at 14-15, requiring her to plead "particularized facts that demonstrate that the directors acted with scienter, *i.e.*, that they had actual or constructive knowledge that their conduct was legally improper," to establish a substantial likelihood of liability.  *In re Facebook*, 367 F. Supp. 3d at 1124.  Plaintiff does not even attempt such a showing of bad faith for any director, let alone a majority of the Demand Board.[3]  And Plaintiff's arguments that the Fisher

[2] Plaintiff's quibble with what standard applies to her demand futility claim is irrelevant.  Opp. at 23.  The relevant prong of the *Aronson* standard (for challenges to board actions) overlaps with the standard set forth in *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993) (for challenges to board inaction)—both requiring a showing that a board majority is "disinterested and independent."  *In re Facebook*, 367 F. Supp. 3d at 1123 n.5 (citing *Rales*, 634 A.2d at 934); *Ocegueda*, 2021 WL 1056611, at *5.

[3] Plaintiff also argues she need not allege demand futility on a director-by-director basis.  Opp. at 24-25.  That might be true in the cases Plaintiff cites, where allegations concern confessions of facts "evidenc[ing] misconduct of such pervasiveness and magnitude" that "the inference of deliberate disregard by each and every member of the board is entirely reasonable."  *In re Pfizer Inc. S'holder Deriv. Litig.*, 722 F. Supp. 2d 453, 462 (S.D.N.Y. 2010); *see also Shaev v. Baker*, 2017 WL 1735573, at *15 (N.D. Cal. May 4, 2017) (noting that defendants "admitted" knowledge of alleged red flags including because of government inquiries, whistleblower complaints, and letters to the board); *Rosenbloom v. Pyott*, 765 F.3d 1137, 1153 (9th Cir. 2014) (noting "repeated FDA warnings about illegal [off-label marketing]" and direct monitoring of off-label sales by the Board).  But where, as here, Plaintiff alleges that directors permitted misleading statements, Plaintiff must allege facts specific to each director's mental state.  *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 132, 134 (Del. Ch. 2009) (requiring "an analysis of the state of mind" of each defendant to determine scienter related to alleged misrepresentations); *Ocegueda*, 2021

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

family and certain directors who also have management roles at Gap lack independence misunderstands the basic independence inquiry for demand futility (rather than public reporting rules) and appears to create a bright-line rule that family members can never exercise independent business judgment of each other. That is simply not the law.

### 1. Plaintiff Fails To Plead That A Majority Of The Demand Board Faces A Substantial Likelihood Of Personal Liability Based On "Red Flags"

Plaintiff argues that the Demand Board faces a substantial likelihood of personal liability because "under Defendants' watch," there were purported "pervasive legal violations going on at the Company." Opp. at 23. Plaintiff pleads no facts to support this audacious claim, relying instead on rank speculation that Gap has an "unlawful pay equity gap and discrimination against women and minorities with respect to hiring and promotion." *Id.* The Complaint does not allege even a single fact suggesting an "unlawful pay equity gap," nor does it contain a single example of discrimination against anyone with respect to hiring or promotion. Yet in order to plead a failure of oversight claim, Plaintiff had to allege with particularity that Defendants "had knowledge of certain 'red flags' indicating corporate misconduct," that they "acted in bad faith by consciously disregarding" that misconduct, and that they bad faith inaction proximately caused a subsequent similar "corporate trauma." *Melbourne Mun. Firefighters' Pension Trust Fund v. Jacobs*, 2016 WL 4076369, at *8 (Del. Ch. Aug. 1, 2016). Plaintiff has alleged no red flags, no bad faith, and no corporate trauma. Instead, the Complaint is nothing more than a compilation of conclusory accusations wholly unsupported by any particularized allegation of wrongdoing of any kind. This falls far short of satisfying Plaintiff's demand futility burden. *See Ocegueda*, 2021 WL 1056611, at *6-7 (rejecting similarly "broad" demand futility allegations that failed to "state facts specific to each director" demonstrating that a majority of them acted with scienter).

***First***, Plaintiff fails to point to anything that could be considered a "red flag" "of illegality." *In re Facebook*, 367 F. Supp. 3d at 1125. Plaintiff points to a two-decade-old lawsuit and settlement related to a single Gap distribution center, Opp. at 6, but that lawsuit is both limited in

_____

WL 1056611, at *6 (requiring demand futility allegations on director-by-director basis). Plaintiff does not allege a single fact suggesting *any* misconduct, let alone a widespread fraudulent scheme of which the Board had knowledge.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

subject matter (one distribution center) and pre-dates the tenure of *ten* of the Board's current thirteen members.  A 1999 lawsuit that the Company settled without admitting liability, AC ¶¶ 72-73, is not a red flag of illegal conduct.  *See Ocegueda*, 2021 WL 1056611, at *6 (rejecting red-flag allegations based on past settled lawsuits) *City of Cambridge Ret. Sys. v. Ersek*, 921 F.3d 912, 922-23 (10th Cir. 2019) (rejecting demand futility allegations where half of board joined after challenged events occurred); *see also Rojas on behalf of J.C. Penney Co., Inc. v. Ellison*, 2019 WL 3408812, at *11 (Del. Ch. July 29, 2019) (recognizing that "conclusory rhetoric" rather than "particularized facts from which it reasonably can be inferred that [a prior] settlement put the directors on notice of any ongoing violations of law" is a "critical flaw in plaintiff's 'red flag' argument").

The only other reference Plaintiff makes to any wrongdoing is a purported "unlawful pay equity gap" and "discrimination against women and minorities with respect to hiring and promotion."  Opp. at 23.  But neither the Complaint nor the Opposition provides any particularized allegations related to either accusation, much less that any Board conduct related to such allegations was legally improper.  *Ocegueda*, 2021 WL 1056611, at *6-7 (rejecting "red-flag" allegations where plaintiff failed to allege defendants' actual knowledge of illegal conduct).  Instead, while the Complaint alleges that Gap publishes a "Gender Pay Equity" report, it laments that such information is not provided for minority employees.  *E.g.*, Compl. ¶ 148; *see also* Opp. at 7 ("Gap has failed to disclose similar information regarding the salaries and compensation of minorities at the Company").  Plaintiff alleges no particularized facts about any pay equity gap on any metric other than her conclusory assertion that "[u]pon information and belief, minorities at Gap are paid less than whites.  *Id.* ¶ 75.  Besides being insulting and inflammatory, Plaintiff provides not an ounce of support for that purported "information and belief."  *See Mulquin v. Nektar Therapeutics*, 2020 WL 7773580, at *7 (N.D. Cal. Dec. 30, 2020) ("if an allegation . . . is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed").  The reason for her conclusory pleading is clear:  contrary to Plaintiff's "information and belief," Gap unequivocally *disclosed* that in 2019, an external firm concluded

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

that there was "no meaningful pay disparity by gender **or race**" across Gap's employees based in California. Ex. E at 4.

Similarly, while Plaintiff's Opposition states that there was discrimination in "hiring, promotion, and other critical terms of employment and equal access," Opp. at 8, all that the Complaint points to are Gap's publicly disclosed workforce demographics. *See, e.g.*, Compl. ¶ 74. Plaintiff does not allege a single instance of any discriminatory act in hiring, pay, promotion, or any other decision, let alone any "conduct to conceal" such an instance. Opp. at 8. Indeed, Plaintiff ignores the fact that her own allegations demonstrate that 58% of the Company's U.S. store employees, 53% of its distribution and call center employees, 46% of its headquarters employees, and 30% of its U.S. store leadership are non-white. Compl. ¶ 4. Absent any particularized allegations of actual discrimination, Gap's workforce demographics demonstrate that the opposite of Plaintiff's inflammatory accusations is true: Gap employs a diverse workforce and cares deeply about promoting the diversity and inclusion of all of its employees. *See* Ex. D (discussing Gap's numerous internal programs aimed at promoting diversity, equity and inclusion).

**Second**, Plaintiff has not, as she claims, "expressly allege[d]" Defendants' knowledge of supposed red flags nor their connection to any purportedly unlawful conduct. Opp. at 24. Plaintiff must plead *particularized facts* "from which it reasonably can be inferred that the [red flags] put the directors on notice of any ongoing violations of law." *Rojas*, 2019 WL 3408812, at *11 . In light of Gap's exculpatory clause, however, Plaintiff can establish a substantial likelihood of liability only if she pleads particularized facts demonstrating *scienter*. *In re Facebook*, 367 F. Supp. 3d at 1124 (applying exculpatory clause and requiring allegations of "actual or constructive knowledge that [defendants'] conduct was legally improper"). The closest Plaintiff comes to alleging a knowable fact is the 1999 lawsuit and subsequent settlement related to a single distribution center in the United States. Opp. at 6, 21. But even assuming that could be an actionable "red flag," Plaintiff fails to plead facts demonstrating any Defendant's actual knowledge of this twenty-year-old lawsuit. Courts routinely reject the "conclusory assertion" that Defendants "knew of the[] red flags" without any "specific factual allegations that would permit an inference that [Defendants] had such knowledge." *Buttonwood Tree Value Partners, LP v. Sweeney*, 2012

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

WL 2086607, at *2 (C.D. Cal. June 7, 2012); *see also Gulbrandsen ex rel. Wells Fargo & Co. v. Stumpf*, 2013 WL 1942158, at *10 (N.D. Cal. May 9, 2013) (same).

Plaintiff similarly provides no particularized facts supporting her allegation that any Defendant was aware of any discriminatory conduct, and consciously disregarded it. Opp. at 24. This is hardly surprising, given that she does not identify any instance of discrimination. Plaintiff's allegations are precisely the sort of conclusory and generalized allegations that courts reject. *Brown v. Moll*, 2010 WL 4704372, at *4 (N.D. Cal. Nov. 12, 2010) (rejecting "conclusory allegations" that directors were "aware" of purported wrongdoing and acted in bad faith in abdicating their responsibilities).

And although the Board was certainly aware of its own visible demographics and Gap's publicly reported workforce demographics, Plaintiff alleges no fact suggesting that information put Defendants on notice of "illegal conduct." *In re Facebook*, 367 F. Supp. 3d at 1125.

Plaintiff's reliance on certain Defendants' Board committee membership is equally misguided. Opp. at 25-26. Courts consistently reject allegations of knowledge "explained solely by virtue of [defendants'] service in [] various capacities." *Ratner v. Bidzos*, 2003 WL 22284323, at *11 (Del. Ch. Sept. 30, 2003); *see also In re MetLife, Inc. Deriv. Litig.*, 2020 WL 4746635, at *15 (Del. C. Aug. 17, 2020) ("[A]n allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem for purposes of Rule 23.1"). Plaintiff attempts to distinguish this well-settled case law holding that membership on a committee, "without specific allegations as to defendants' roles and conduct" is insufficient by arguing that she alleges more. Opp. at 25-26 (citing *In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 963 (N.D. Cal. 2007)). But the "more" Plaintiff alleges is only the general charter of the Board's committees, *e.g.*, that the Audit Committee reviews Gap's "practices with respect to risk assessment and risk management." Opp. at 25. Plaintiff does not explain what information any Defendant purportedly learned through his or her committee service—let alone how committee service gave any Defendant actual knowledge of illegal conduct (or "red flags" of illegality).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

Plaintiff's cited authority does not compel a different conclusion. Opp. at 25-26. In *In re Intuitive Surgical Shareholder Derivative Litigation*, the court emphasized that "[g]enerally, an allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee does ***not*** support an inference that the directors on that committee knew of and consciously disregarded the problem for purposes of Rule 23.1." 146 F. Supp. 3d 1106, 1120-21 (N.D. Cal. 2015) (internal quotation marks omitted) (emphasis added). Applying that principle, the court found an inference of knowledge only because, "beyond the directors' membership in the Audit Committee, they knew of the defect and regulatory deficiencies." *Id.* The same was true in the two out-of-district cases Plaintiff cites. In *In re SCANA Corporate Derivative Litigation*, the plaintiff pled with particularity that members of various board committees received third-party reports on progress, "insurmountable" issues, and variances related to the company's nuclear projects that were touted as fundamental to the company's success, but were ultimately abandoned. 2018 WL 3141813, at *5-6 (D.S.C. June 27, 2018). And in *In re Zillow Group, Inc. Shareholder Derivative Litigation*, the plaintiff alleged particularized facts showing the audit committee had "received [a] civil investigative demand" from a government agency related to that misconduct. 2020 WL 978503, at *3 (W.D. Wash. Feb. 28, 2020). Plaintiff here does not (and cannot) point to any such allegations of specific information received or actions taken by any Defendant by virtue of his or her committee membership. *See Bhonagiri v. Pandey*, 2020 WL 5893404, at *3 (N.D. Cal. Oct. 5, 2020) (holding allegations of committee membership "fail to establish. . . a substantial likelihood of liability" absent particularized facts showing members "received additional information that would have put them on notice of" misconduct).

***Third***, even if Plaintiff had alleged a red flag that Defendants consciously ignored, she makes no attempt to tie it to a cognizable harm. *Melbourne*, 2016 WL 4076369, at *8. As discussed, Plaintiff has not identified *any* illegal conduct occurring at Gap whatsoever. The only thing remotely resembling a potential incident of supposed "misconduct" is a 2003 settlement of a 1999 lawsuit. "Red flags" are supposed to be the harbingers of something larger, more widespread, and illegal—but Plaintiff does not allege any misconduct in the intervening 18 years. Instead, she insists that Defendants' undefined wrongdoing caused Gap "significant harm and

damages" in the form of costs for (1) "internal and external investigations into issues pertaining to the lack of diversity at Gap, discrimination lawsuits, harassment claims, wrongful termination lawsuits, and lack of pay equity claims"; (2) hiring employees to replace those who "have quit in protest over Defendants' misconduct and the discriminatory practices employed by Gap"; (3) settlements in "discrimination lawsuits"; and (4) unjust compensation to Defendants. Opp. at 13. All of these are made up. Plaintiff does not point to a single "investigation"; does not identify any discrimination lawsuit (other than her own), harassment claim, wrongful termination lawsuit or pay equity claim; does not name a single employee who purportedly left Gap in protest; and fails to explain why or to what extent compensation paid to Defendants was improper or excessive.

In any event, Plaintiff never links any of these purported harms to any Board misconduct or, for that matter, any illegal conduct at Gap at all. *In re Facebook*, 367 F. Supp. 3d at 1125 ("The 'corporate trauma' must be sufficiently similar to the misconduct implied by the 'red flags,' such that the board's bad faith, conscious inaction proximately caused the trauma.") (internal quotation marks omitted). Putting aside that the "harms" Plaintiff alleges have not actually occurred, it strains credulity to think that purported "conscious inaction" in the face of a lawsuit from 1999— which is over a decade before the vast majority of the Board even joined—"proximately caused" the only harm the Company has actually suffered, which is having to defend against this frivolous lawsuit. The failure to identify a concrete corporate trauma, let alone one tied directly to any particularized red flag, independently dooms Plaintiff's claims.

## 2. Plaintiff Fails To Allege A Substantial Likelihood Of Liability For Her Proxy Claims

Plaintiff separately argues that the Demand Board faces a substantial likelihood of liability for having "approved" allegedly misleading Proxies. Opp. at 19-23. Plaintiff contends that Gap's 2019 and 2020 Proxies omitted certain "facts that would have been material to the shareholders' consideration" of the items subject to vote—that (1) the Board "never in good faith actively sought African-American or minority candidates and does not consider racial and ethnic diversity when choosing Board nominees"; (2) Board tenures led to an "entrenched Board and failure to consider new, diverse candidates"; (3) retention of Deloitte "resulted in poor auditing"; (4) Gap lacked

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

effective internal controls related to anti-discrimination, anti-harassment, pay equity, and other related areas; (5) executive compensation was not tied to increased diversity, and the portion designated for "Performance Culture/Corporate Objectives" did not specify what those objectives were; and (6) executive compensation was "based in part" on "unlawful and discriminatory hiring, promotion, and pay practices." *Id*. at 20-21. According to Plaintiff, these purported omissions "give rise to a substantial likelihood of liability for violation of Section 14(a)." *Id*. at 21. Not so.

As an initial matter, none of these alleged "omissions" is a "fact" at all, and Plaintiff offers no particularized allegation substantiating her accusations. *Ocegueda*, 2021 WL 1056611, at *7 (rejecting similar alleged omissions because they were "not facts," but "conclusions"). First, Plaintiff does not and cannot support her inflammatory opinion that the Board has never actively sought minority candidates. She refuses to accept the indisputable fact that the Board *does* include (and has consistently had) minority members. Six of the thirteen current Board members are female and two are ethnically diverse. Mot. at 9-10. And Gap has had a Black director for thirteen of the last twenty-two years. *Id*. Consistent with that longstanding commitment to the diversity of the Board, Gap's most recently appointed director, Salaam Coleman Smith, is a Black woman.[4] Plaintiff's bald assertion that Defendants "never in good faith actively sought" diverse Board candidates lacks any factual support and is belied by Gap's long history of consistently promoting diversity on its Board.

Plaintiff's argument that Defendants' Board tenures have led to an "entrenched" Board is similarly unfounded. Nearly half of the current Board joined in 2018 or later. Ex. C (2020 Proxy) at 5-8. Plaintiff's subjective disagreement with the Proxy's statement that experienced directors "bring strong leadership to the Board" and have a "deep understanding and unique insight into [Gap's] organizational and operational structure," Compl. ¶ 107; Opp. at 32, is both unsupported and of no moment. Gap directors are elected annually, Ex. C at 5 ("Directors will be elected at the Annual Meeting to serve until the next Annual Meeting"), and shareholders like Plaintiff are free to vote against anyone whom they believe is "entrenched."

---

[4] *See* Gap's Form 8-K publicly filed with the SEC on March 4, 2021 and Exhibit 99.4 attached thereto announcing appointment of Ms. Smith to the Board.

Similarly, Plaintiff alleges without any support that Deloitte was not performing "effective auditing" and that Gap lacked "effective internal controls." Opp. at 32. But Plaintiff does not allege any error in any of Deloitte's audits nor any internal control over financial reporting that was ineffective. Nor does she acknowledge that Deloitte audits Gap's "consolidated annual financial statements and internal controls *over financial reporting*." Ex. C (2020 Proxy) at 21. Deloitte's work with the Company simply has nothing to do with diversity and inclusion.

Finally, Plaintiff asserts that Gap's executive compensation is "not tied in any way to the achievement of increased diversity and [sic] the Company" and that the Proxy did not disclose the granular details of the "non-financial objectives" that comprised 30% of executive compensation. Opp. at 32. But Plaintiff offers no support, other than her own conclusion, that achievement of diversity goals did not factor into executive compensation. Nor does she plead why the Company's disclosure of its process for determining executive compensation was misleading in any way. Plaintiff cannot manufacture a securities claim based on her opinion that diversity was not a sufficiently important factor in the Board's executive compensation calculus.

Moreover, given Gap's exculpatory clause, as noted, Plaintiff must establish that the Board *knowingly* misrepresented or concealed material information to establish a substantial likelihood of liability. *See In re Citigroup,* 964 A.2d at 134-35 (rejecting demand futility allegations that did not "sufficiently allege that director defendants had knowledge that any disclosures or omissions were false or misleading or that the director defendants acted in bad faith in not adequate informing themselves"). But again, Plaintiff relies only on conclusory assertions of "Defendants' knowledge," without citing a single fact in support. Opp. at 21, 24. And setting aside Gap's workforce demographics and the 1999 lawsuit (both of which were publicly available), Plaintiff cannot seriously argue that Defendants had a duty to inform themselves of her subjective opinions before allowing the Proxies to issue. *Id.* at 23 (arguing "it is reasonable to infer that directors who approved the 2019 and 2020 Proxies did so on an informed basis and after due deliberation").

In any event, Plaintiff has not alleged a single cognizable corporate harm related to such purported wrongdoing. *Melbourne*, 2016 WL 4076369, at *8. That alone is fatal to her claim.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

### 3. Plaintiff Fails To Establish That Any Member—Let Alone A Majority—Of The Board Lacks Independence

Plaintiff bizarrely begins her demand futility argument by disputing the independence of five members of the Board. Opp. at 15-19. But Plaintiff must first adequately allege that at least one director is interested (*i.e.*, faces a substantial likelihood of liability); only then does the Court assess whether the remaining directors are independent *of that interested director*. *See Rales*, 634 A.2d at 936 (analyzing "interest" first, then considering whether non-interested directors were so "beholden" to interested directors "that their discretion would be sterilized"). Because Plaintiff has not identified any director who faces a substantial likelihood of liability, her independence argument is irrelevant. *See id.*; *In re Facebook*, 367 F. Supp. 3d 1128-29.

In any event, her independence argument is also meritless. Plaintiff argues that three members of the Fisher family (Gap's founders) lack independence because they own a 43% stake in Gap. Opp. at 16-17. Plaintiff claims the Fisher family has made "several hundred million dollars" from "paying less to African-American and minority employees." *Id.* at 16. Of course, this claim is false and without a single fact alleged in support. Mot. at 20. But it is also insufficient to plead an improper personal benefit that would support a lack of independence. Plaintiff concedes that the only "benefit" the Fisher family directors received is the dividend from their Gap shares, which is the same pro rata dividend Plaintiff (and every other Gap shareholder) receives. *Id.* Moreover, "even proof of majority ownership of a company does not strip the directors of the presumptions of independence." *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984); *see also In re Facebook*, 367 F. Supp. 3d at 1128 ("The mere fact that [a defendant] is a controlling shareholder is not enough to establish his [or her] lack of independence."). And the Fisher brothers' family relationship is not enough, on its own, to eviscerate their independence, particularly given that Plaintiff has not alleged that they lack independence from any interested director. *See Harris v. Carter*, 582 A.2d 222, 229 (Del. Ch. 1990) ("no single factor" including "family or social relationships . . . may itself be dispositive in any particular case").[5]

---

[5] Indeed, in each of the cases Plaintiff cites in her Opposition finding a lack of independence for family relationships, the inquiry centered on the ability of one defendant to independently consider

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Plaintiff also claims that Ms. Syngal's role as CEO, Mr. Martin's role as advisor to the CEO, and Mr. Robert Fisher's role as interim CEO until March 2020 (and his tenure on the Board) eliminate their ability to independently consider a demand. Opp. at 18-19. But serving and being paid as a company officer does not automatically render one unable to exercise business judgment in assessing a shareholder demand. *See La. Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1060-61 (9th Cir. 2016) (affirming dismissal of demand futility action against CEO-director and controlling shareholder). Indeed, to automatically disqualify employee-directors "involved in the day-to-day running of the company" "would eviscerate the disinterested prong of the demand futility test." *In re Facebook*, 367 F. Supp. 3d at 1128. And courts have consistently rejected Plaintiff's attempt to treat "independence" under NASDAQ listing rules and for demand futility purposes as synonymous. *See, e.g.*, *Forestal v. Caldwell*, 739 F. App'x. 895, 897-99 (9th Cir. 2018) (affirming dismissal where plaintiff alleged futility as to CEO-director classified as "not independent" under NASDAQ rules). Plaintiff conflates two different meanings of "independence" and would create a rule that would make demand futile for *any* director who has a role in Company management, derives an income from their role, and/or has served on the Company's Board for an undefined but too-long period of time. That is not the law.

**B.    Plaintiff Cannot Circumvent The Forum-Selection Clause**

The Opposition fails to provide any basis to circumvent Gap's forum-selection clause. Gap's Bylaws contain a forum-selection clause designating the Delaware Court of Chancery as the exclusive forum for any derivative action and any action alleging a breach of fiduciary duties. Mot. at 21. That clause is valid and enforceable under well-settled law, it plainly encompasses Plaintiff's allegations, and it thus requires dismissal of the Complaint on *forum non conveniens* grounds. Indeed, Judge Beeler enforced a virtually identical clause to dismiss identical Delaware claims against Facebook's board of directors. *Ocegueda*, 2021 WL 1056611, at *9.

---

a demand that was adverse to the family members' interest. *See* Opp. at 17 (citing *Mizel v. Connelly*, 1999 WL 550369, at *4 (Del. Ch. July 22, 1999) (finding grandson unable to consider demand adverse to grandfather)); *id.* (citing *Grace Bros., Ltd. v. Uniholding Corp.*, 2000 WL 982401, at *10 (Del. Ch. July 12, 2000) (assessing independence of director from brother-in-law after already determining that brother-in-law was interested)); *id.* (citing *Harbor Finance Partners v. Huizenga*, 751 A.2d 879, 886-87 (Del. Ch. 1999) (considering whether defendant was "beholden to" brother-in-law who was already determined to be interested in challenged transaction).

The Opposition disputes little of this. Plaintiff does not challenge the *validity* of the forum-selection clause—an argument that would be untenable in light of established Delaware law expressly authorizing such clauses. *See Salzberg v. Sciabacucchi*, 227 A.3d 102, 114 (Del. 2020); *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 942, 963 (Del. Ch. 2013). Nor does Plaintiff dispute that she brings a "derivative action" and asserts a "fiduciary duty" claim. Instead, Plaintiff claims the forum-selection clause cannot be *enforced* against her at all in this case because of her tack-on federal securities claim. Opp. at 26-31. But none of Plaintiff's arguments comes close to meeting the "heavy burden" necessary to render a valid forum-selection clause unenforceable. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009).

***First***, Plaintiff largely ignores the cases requiring courts to enforce "forum-selection clauses unless the contractually selected forum affords the plaintiffs *no remedies whatsoever.*" Mot. at 24 (quoting *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1089 (9th Cir. 2018) (emphasis added)); *id.* at 24-25 & n.12. When Plaintiff addresses precedent, she focuses on empty distinctions that have been flatly rejected. *Compare* Opp. at 29 (arguing that *Richards v. Lloyd's of London*, 135 F.3d 1289, 1295 (9th Cir. 1998), involved an "international agreement"), *with Sun*, 901 F.3d at 1084, 1089 (enforcing forum-selection clause that prevented pursuit of certain claims because *Richards* "is equally applicable when a clause points to a state-forum").[6] She then attempts to distinguish *Sun* by claiming that it involved "sophisticated parties," Opp. at 29, but that is both inaccurate and irrelevant. The "sophistication" of the parties (including family-member plaintiffs) played no role in the *Sun* Court's analysis. 901 F.3d at 1084-85. Instead, *Sun* applied longstanding precedent and enforced the forum-selection clause even though "certain types of remedies [were] unavailable in the foreign forum. *Id.* at 1092. Plaintiff's complaints about

---

[6] Plaintiff points out that the *Sun* Court observed that plaintiffs there were likely not foreclosed from pursuing their preferred remedies under Washington law. Opp. at 29. But *Sun*'s reasoning did not turn on that fact, as made clear by the Court's emphatic language—requiring enforcement unless the "selected forum affords the plaintiffs *no remedies whatsoever.*" 901 F.3d at 1092 (emphasis added). And that is how all courts have subsequently understood *Sun*. *See, e.g.*, *Color Switch LLC v. Fortafy Games DMCC*, 818 F. App'x 694, 696 (9th Cir. 2020); *Spread Your Wings, LLC v. AMZ Grp. LLC*, 2020 WL 5749085, at *5 (N.D. Cal. Sept. 25, 2020) ("[C]ourts must enforce a forum-selection clause unless the contractually selected forum affords the plaintiffs no remedies whatsoever." (quoting *Sun*, 901 F.3d at 1092); *Lightfoot v. MoneyonMobile, Inc.*, 2019 WL 2476624, at *4, *7 (N.D. Cal. June 13, 2019) (same).

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

supposed differences between Delaware law and Section 14(a) are thus beside the point. Opp. at 28-29. What matters is that Plaintiff can seek *some* form of relief in Delaware. And since she has now *conceded* as much, *id.* (describing related claims under Delaware law), the Court must enforce the valid forum-selection clause. Moreover, Plaintiff cannot rely on the purported difference in pleading standards between a Section 14(a) claim and a Delaware nondisclosure claim, *id.* at 28, because Gap's exculpation clause requires that she plead scienter in any event, *supra* Section II.A.

Plaintiff also misrepresents case law. For example, she claims that a Texas district court denied a motion to dismiss on *forum non conveniens* grounds because the "Delaware Court of Chancery lacks jurisdiction over plaintiff's § 14(a) claim." Opp. at 29 (citing *Butorin v. Blount*, 106 F. Supp. 3d 833, 837 (S.D. Tex. 2015)). But *Butorin*'s outcome was driven by the language of a different clause, which designated Delaware state court "*or, if not state court located within the State of Delaware has jurisdiction*, the federal district court for the District of Delaware." 106 F. Supp. 3d at 835 (emphasis added). *Butorin*'s decision to transfer the case to Delaware federal court rather than dismiss the case just followed the plain language of that clause. This Court should likewise follow the plain language of Gap's forum-selection clause and dismiss the Complaint.[7]

***Second***, Plaintiff argues that Delaware law prohibits enforcing the forum-selection clause against the Section 14(a) claim. Opp. at 26-28. Plaintiff contends the *Boilermakers* court "*specifically observed* that such a forum-selection clause *would not be valid* with regard to a claim within the federal courts' exclusive jurisdiction." *Id.* Again, Plaintiff misrepresents the case. In *Boilermakers*, the court expressly declined to resolve hypothetical questions about the interaction between state forum-selection clauses and claims within the exclusive jurisdiction of the federal courts. 73 A.3d at 962. And the Delaware Supreme Court later confirmed that corporate charters may include forum-selection clauses governing claims involving "intracorporate litigation," regardless whether the claims rest on state or federal law. *Salzberg*, 227 A.3d at 114.

---

[7] Plaintiff argues that the district court in *Seafarers* "wrongly decided" the issue because federal courts "have a virtually unflagging obligation to exercise" their jurisdiction over Exchange Act claims. Opp. at 30 (citing *In re Seafarers Pension Plan on behalf of Boeing Co. v. Bradway*, 2020 WL 3246326 (N.D. Ill. June 8, 2020), appeal docketed, No. 20-2244 (7th Cir. July 9, 2020)). But federal courts must enforce valid forum-selection clauses even when they otherwise have jurisdiction, and regardless, binding Ninth Circuit precedent dictates the same result.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

Plaintiff also cites *Boilermakers* for the proposition that a forum-selection provision might be "inconsistent with the antiwaiver provisions" of the Exchange Act. Opp. at 27; *see also id.* at 28 (citing 15 U.S.C. § 78cc(a)). But the Ninth Circuit has already rejected that argument. *See, e.g.*, *Sun*, 901 F.3d at 1089 ("We . . . rejected the plaintiffs' argument that the antiwaiver provisions [of the federal securities laws] barred enforcement of the forum-selection clause."); *Batchelder v. Kawamoto*, 147 F.3d 915, 919 (9th Cir. 1998), *as amended* (July 15, 1998) (same). In any event, Gap's clause does *not* entail waiving compliance with the Exchange Act—it does not mention the Act at all, and nothing in the provision prevents Plaintiff from bringing a direct claim under Section 14(a). Plaintiff chose instead to bring a "derivative action," and because such actions fall within the plain language of the forum-selection clause, that provision is controlling.[8]

### C. Plaintiff Fails To State A Claim For Violation Of Section 14(a)

#### 1. Plaintiff Fails To Allege A Material Misstatement Or Omission

Plaintiff's Section 14(a) allegations distill to a claim that Gap misrepresented its commitment to diversity. Opp. at 9-11. Plaintiff alleges that Gap's Proxies omitted that the Board "never in good faith actively sought African-American or minority candidates" and its nomination policies do not "promot[e] overall diversity." *Id.* at 31-32. Plaintiff further argues that the Proxies omitted that retaining Deloitte was not "conducive to effective auditing," and that Gap's internal controls "with regard to diversity" were ineffective. *Id.* at 32. Finally, Plaintiff claims the Proxies' disclosure of Gap's executive compensation formula was misleading because it failed to disclose that achievement of diversity goals was not a factor in compensation and failed to specify what "performance culture" and "corporate objectives" were considered in the calculus. *Id.*

---

[8] Plaintiff's remaining arguments for exempting the Section 14(a) claim are meritless. She asserts the forum-selection clause would "violate [] the Supremacy Clause" by contravening the Exchange Act's antiwaiver provision. Opp. at 28. She also claims that federal courts have a duty to hear cases within their jurisdiction. *Id.* Those arguments are "inadequately presented, and therefore waived." *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 n.1 (9th Cir. 2008). In any event, the forum-selection clause is not inconsistent with the Exchange Act, and courts may properly dismiss based on *forum non conveniens* grounds before evaluating subject-matter jurisdiction. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-32 (2007). Plaintiff also asserts that enforcing the forum-selection clause would violate a "strong public policy of the forum in which the suit is brought," Opp. at 30, but never explains *which* public policy—an error the Ninth Circuit has found fatal, *see, e.g.*, *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 916 (9th Cir. 2019) (rejecting similar argument where plaintiffs "did not identify a Washington statute or judicial decision that clearly states such a strong public policy").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

Plaintiff admits that the basis for her fiduciary duty and Section 14(a) claims is identical, Opp. at 21, which is alone fatal, Mot. at 31. And, contrary to her assertion, Opp. at 31, Rule 9(b) and the PSLRA *do* apply to her Section 14(a) claim. *See In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1211 (N.D. Cal. 2007) ("Under the PSLRA, a § 14(a) claim must be pled with particularity."); *Knollenberg v. Harmonic, Inc.*, 152 F. App'x. 674, 682 (9th Cir. 2005) (applying the PSLRA to Section 14(a) claims). Rule 9(b) applies, requiring particularized allegations of scienter, because Plaintiff alleges "knowing" misstatements related to a single course of purportedly fraudulent conduct (*i.e.*, intentionally allowing Gap to issue misleading Proxies). Compl. ¶¶ 11, 113, 202, 226; Opp. at 32 ("Defendants knew of, but failed to disclose, unlawful and discriminatory practices at Gap"); Mot. at 26 n.13; *see also Ocegueda*, 2021 WL 1056611, at *9(finding that similar allegations "sound in fraud"). Regardless, Gap's exculpatory clause requires Plaintiff to plead scienter for demand futility, and because the issuance of the Proxies forms the basis of her demand futility theory, Plaintiff must also plead her Section 14(a) claim with scienter. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004) (holding Delaware's stringent demand futility standards apply equally to Section 14(a) claim and fiduciary duty claims). Plaintiff's failure to satisfy that heightened standard dooms her claims.

Regardless, under any standard, Plaintiff's allegations fare no better here than they did in Facebook, *Ocegueda*, 2021 WL 1056611, at *9-10, and Plaintiff's arguments do not cure the fatal deficiencies Defendants identified in their Opening Brief.[9] Mot. at 25-34. As an initial matter, Plaintiff does not respond to, and thereby concedes, Defendants' arguments that the challenged statements are immaterial as a matter of law because they amount to purported omissions of a breach of fiduciary duty, or are inactionable opinions such as "the Board ***believes*** that . . . diversity is important to the effectiveness of the Board's oversight of the Company." Mot. at 31-32.

Moreover, Plaintiff pleads no fact remotely suggesting that "the Board has never in good faith actively sought minority candidates." Opp. at 32. Nor could there be, given that in the 2019 and 2020 Proxies multiple female and/or minority candidates were nominated to the Board, and

---

[9] Plaintiff notably does not address her original claim that the Proxies omitted salary data for minority employees. *See* Mot. at 29-30. Plaintiff therefore abandons that claim.

Gap has consistently had non-white directors.  Mot. at 3.  As the Proxies noted, Gap's director-nominating criteria is aimed at promoting "**overall diversity**"—not just diversity represented by race or ethnicity, but "tenure, professional, personal, gender, and racial/ethnic diversity."  Ex. C at 13.  Plaintiff fairs no better with her claim that the Board is "entrenched" and fails to consider new, diverse Board candidates.  Opp. at 32.  Plaintiff admits that the Proxies disclosed the Board's nomination process, which aims to promote "overall diversity", *e.g.* Compl. ¶¶ 101, 103, and, as noted, directors are subject to reelection every year at Gap's annual meeting, Ex. C at 5.  And far from being "entrenched," six of the thirteen directors on the Demand Board—which includes four women—were appointed since 2018.  Compl. ¶¶ 31-43; Ex. C at 5-8.  Plaintiff ignores these facts and identifies no fact demonstrating that any statement in the Proxies related to Board diversity and new candidate nomination was misleading.  *Ocegueda*, 2021 WL 1056611, at *9-10.

Plaintiff also fails to allege any misstatement related to Gap's retention of Deloitte or the Company's internal financial controls.  Opp. at 32.  Plaintiff identifies no fact substantiating her assertion that Deloitte's audits were ineffective.  And her opinion that Gap's controls over financial reporting purportedly did not protect against discrimination does not render any statement in the Proxies false or misleading.  Plaintiff offers no explanation for how financial reporting controls have anything to do with hiring practices.  But more importantly, she again fails to identify any alleged instance of discrimination to substantiate the harm supposedly resulting from Deloitte's purportedly ineffective audit of financial controls.  *See Lopez v. CTPartners Executive Search*, 173 F. Supp. 3d 12, 19, 26-29 (S.D.N.Y. 2016).

Finally, Plaintiff claims the Proxies were misleading because they described Gap's executive compensation formula without disclosing that it allegedly was "not tied in any way to the achievement of increased diversity" or what the "Performance Culture/Corporate Objectives" were that accounted for 30% of executive compensation.  Opp. at 32-33.  But Plaintiff does not allege *any* fact suggesting that Gap's executive compensation was *not* based in part on non-financial factors, including "talent strategies," "leadership behaviors," non-financial performance behaviors, and "achievement of corporate objectives," including diversity.  Compl. ¶¶ 127-31.  Plaintiff's speculation does not render Gap's disclosures false or misleading.  Plaintiff concedes

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

that Gap accurately disclosed its executive compensation statistics and formula, *e.g.*, Compl. ¶¶ 121, 145, and she does not contest that Gap retained an independent consultant who opined that such compensation did not risk a material adverse effect on the Company. Mot. at 29.

### 2. Plaintiff Fails To Allege That The Proxies Were An "Essential Link" To The Purportedly Loss-Generating Corporate Action

Plaintiff dedicates less than half a page to Defendants' argument that she failed to allege an "essential link" between any purported misstatement and any harmful corporate action. Opp. at 34. Plaintiff claims harm from approval of executive compensation, and that shareholders would not have voted to reelect directors and retain Deloitte absent the purported misstatements. *Id.* But Plaintiff's conclusions do nothing to identify how the election of directors (including women and persons of color), the retention of an independent auditor, and an advisory vote on executive compensation, represented an "essential link" that caused any of her alleged harms. *See City of Birmingham Relief and Ret. Sys. v. Hastings*, 2019 WL 3815722, at *15 (N.D. Cal. Feb. 13, 2019) (finding allegations of injury in the form of excessive executive compensation and damage to corporate reputation did not satisfy loss causation standard); *In re JPMorgan Chase Deriv. Litig.*, 2014 WL 5430487, at *24 (E.D. Cal. Oct. 24, 2014) (conclusory allegations that shareholders would have voted for different directors insufficient because it was implausible that electing different directors would have avoided the alleged harm). Plaintiff's failure makes sense given that she has not alleged any cognizable harm suffered by Gap. As a result, she has not alleged that the Proxies were an essential link to any loss-generating corporate action.[10] *Ocegueda*, 2021 WL 1056611, at *9-10 (dismissing complaint based on conclusory allegations of "essential link").

---

[10] Plaintiff's only case, Opp. at 34, is distinguishable. In *In re Wells Fargo & Co. Shareholder. Derivative Litigation*, plaintiffs alleged detailed *facts* showing the defendants "perpetuated a fraud" that went "far beyond simple mismanagement" and which directly resulted in corporate harm. 282 F. Supp. 3d 1074 1105 (N.D. Cal. 2017); *see also In re Paypal Holdings, Inc. S'holder. Deriv. Litig.*, 2018 WL 466527, at *4 (N.D. Cal. Jan 18, 2018) (distinguishing *Wells Fargo*). Plaintiff points to no similar facts of fraud or mismanagement here. She relies only on conclusory allegations of undefined "discrimination," of which Defendants were purportedly aware, but makes no effort to claim Defendants "perpetuated" any such wrongdoing. And Plaintiff has not alleged *any* cognizable harm, which pales in comparison to the billions of dollars Wells Fargo lost due to the illegal scheme.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

### 3. Plaintiff's Section 14(a) Claim Is Partially Time-Barred

Plaintiff does not dispute that all of the information underlying her Section 14(a) claim based on the 2019 Proxy was publicly available before that Proxy issued, and instead contends, without explanation, that Defendants have not shown such information was "sufficient for a reasonable person to discover all of the facts constituting the violation, including damages to Gap." Opp. at 35. But the statute of limitations begins when there are enough facts to put a prospective plaintiff on notice of the claim—not "all of the facts." *Id.*; Mot. at 34. And given that Plaintiff does not allege any cognizable harm to Gap, she has not identified any additional facts that were unavailable to her at the time the 2019 Proxy was issued. Plaintiff's claim based on the 2019 Proxy is time-barred as it was brought over one year after discovery of the alleged violation. *Id.*

### D. Plaintiff's Claims Are Unripe

Plaintiff's claims are unripe because her damages claims are mere speculation of potential future injuries. She claims that Gap faces "a realistic danger" of undefined injury, conceding that such risk is "very remote." Opp. at 35. Plaintiff's damages claims are unsupported and her articulation of the relevant standard is wrong. A claim is unripe if the damages "may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). The only concrete damages Plaintiff alludes to are the costs of defending against *this lawsuit*. But Plaintiff cannot *create* the damages she seeks. Plaintiff's other claims are entirely speculative and unaccompanied by any allegation that they have ever (or will ever) occur.[11] Plaintiff cannot conjure up nonexistent damages. *See City of Birmingham*, 2019 WL 3815722, at *15.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss this action for failure to make a pre-suit demand on the Gap's Board as required by FRCP 23.1, pursuant to the doctrine of *forum non conveniens*, for failure to state a claim under FRCP 12(b)(6) for violating Section 14(a) of the Exchange Act, and because Plaintiff's claims are unripe.

---

[11] Plaintiff asserts costs of (1) undefined "investigations"; (2) hiring new employees "to replace employees who have quit"; and (3) defense and settlement of unnamed "discrimination lawsuits." Opp. at 35. None of these has occurred, and Plaintiff does not—because she cannot—point to any fact indicating that there has been or will be any "investigation," any employees who have quit (let alone who have quit for any reason related to this lawsuit), or any discrimination lawsuit.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK

Dated:  April 1, 2021

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Elizabeth L. Deeley*
Elizabeth L. Deeley (Bar No. 230798)
Morgan E. Whitworth (Bar No. 304907)
 *elizabeth.deeley@lw.com*
 *morgan.whitworth@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
T:  +1.415.391.0600 / F:  +1.415.395.8095

Susan E. Engel (*pro hac vice*)
 *susan.engel@lw.com*
555 Eleventh Street, Suite 1000
Washington, D.C. 20004
T:  +1.202.637.2200 / F:  +1.202.637.2201

William J. Trach (*pro hac vice*)
 *william.trach@lw.com*
200 Clarendon Street
Boston, MA 02116
T:  +1.617.948.6000 / F:  +1.617.948.6001

Daniel R. Gherardi (CA Bar No. 317771)
 *daniel.gherardi@lw.com*
140 Scott Drive
Menlo Park, CA  94025
T:  +1.650.328.4600 / F:  +1.650.463.2600

*Attorneys for Defendants Robert J. Fisher,*
*Sonia Syngal, Arthur Peck, Amy Bohutinsky,*
*Amy Miles, Isabella D. Goren, Bob L. Martin,*
*Chris O'Neill, Elizabeth A. Smith, John J.*
*Fisher, Jorge P. Montoya, Mayo A. Shattuck III,*
*Tracy Gardner, William S. Fisher, and Doris F.*
*Fisher and Nominal Defendant The Gap, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 3:20-CV-06163-SK